**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DECEMBER 22, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
DECEMBER 22, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 100540-7 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| WILLIAM E. TALBOTT II, | ) | |
| | ) | |
| | ) | Filed: <u>December 22, 2022</u> |
| Respondent. | ) | |
| | ) | |

YU, J. — In this case, we must decide whether a party who declines to remove a prospective juror with an available peremptory challenge has the right to appeal the seating of that juror. The answer is no.

The trial court denied William E. Talbott II's motion to excuse a prospective juror (juror 40) for cause. Talbott could have removed juror 40 with a peremptory challenge, but he did not, nor did he exhaust his peremptory challenges on other prospective jurors. Instead, Talbott affirmatively accepted the jury panel, including juror 40, with at least two peremptory challenges still available to him.

*State v. Talbott*, No. 100540-7

After he was convicted, Talbott appealed the denial of his for-cause challenge to juror 40. His claim is foreclosed by a long line of precedent holding that a party who accepts the jury panel without exhausting their peremptory challenges cannot appeal "based on the jury's composition." *State v. Clark*, 143 Wn.2d 731, 762, 24 P.3d 1006 (2001). Nevertheless, Talbott argues that *Clark* has been, or should be, rejected in light of dicta from *State v. Fire*, 145 Wn.2d 152, 158, 34 P.3d 1218 (2001). He is incorrect.

*Fire* did not overrule *Clark*. The two cases address different scenarios because the appellant in *Fire* exhausted their peremptory challenges and the appellant in *Clark* did not. Moreover, the holdings of *Clark* and *Fire* are consistent with each other; it is only in dicta that *Fire* appears to contradict *Clark*. It is this dicta in *Fire* that has created some confusion and uncertainty in this area of the law. Thus, we take this opportunity to clarify that a party who does not exhaust their peremptory challenges and accepts the jury panel cannot appeal the seating of a particular juror. Our holding is limited to the facts in this case, and we express no opinion on the analysis that applies where a party exhausts their peremptory challenges and objects to the jury panel.

Here, Talbott did not exhaust his peremptory challenges and he affirmatively accepted the jury panel, including juror 40. As a result, we will not reach the

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Talbott*, No. 100540-7

merits of his claim that juror 40 should have been dismissed for cause. We reverse and remand to the Court of Appeals to address the remaining issues on appeal.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.    Factual background

In mid-November 1987, Jay Cook's father sent Cook to Seattle to buy parts for his furnace business in Victoria, British Columbia, Canada. Cook invited Tanya Van Cuylenborg to join him on the trip. They planned to leave on Wednesday, November 18, and return the next day. However, the pair did not make it to their destination. For the next few days, family members distributed posters and went on several trips to find the missing couple.

Van Cuylenborg's body was found on November 24 in Skagit County, displaying evidence of sexual assault. Cook's body was found on November 26 in Snohomish County. Despite a multicounty law enforcement effort to solve the murders, no arrests were made. It was not until 30 years later that law enforcement, with the assistance of a genealogist, identified Talbott as the source for DNA (deoxyribonucleic acid) that was collected in 1987. Talbott was arrested in 2018 and charged with two counts of aggravated first degree murder.

B.    Jury selection

The issue presented for our review stems from Talbott's unsuccessful motion to excuse juror 40 for cause. Juror 40 was questioned individually because

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"someone [she] had been close to had been a victim of sexual assault, murder, or other violent act." 1 Verbatim Rep. of Proc. (VRP) (June 11, 2019) at 292. When the court asked for more information, juror 40 explained,

> [M]y mother was the victim of a lot of domestic abuse. So while I am able to reasonably set aside my own, I guess, experiences in life, I just wanted to put that out there, because *I don't know how I would feel*, being shown evidence of something that could bring up memories that I have worked to get rid of.

*Id.* at 293 (emphasis added). The court asked, "[D]o you think that would affect you to the point where you think you could not be fair and impartial in assessing the evidence in this case as to both the state and Mr. Talbott?" *Id.* Juror 40 responded that she "wouldn't know until the time came" and that "[i]f there was some action taken towards a young woman, [she] might take that personally and not be able to be impartial." *Id.*

The court then opened up the discussion to the attorneys, starting with defense counsel. Juror 40 expressed concern about seeing "potentially graphic evidence." *Id.* at 294. Defense counsel informed juror 40 that "[i]n this case you would hear and see all of that kind of evidence," explaining that the charges concerned "a young woman, 18 years old, who was murdered, who the state is accusing of—is accusing was sexually assaulted." *Id.* at 295. Counsel then advised juror 40,

> [Y]ou have to tell me if you think that this is just not the right case for [you], that there's enough of a chance that [you] could be biased that

4

> [you] don't want to sit on a jury where [you] have to be fair where [you] don't know if [you] can. If that's your position, I would just ask that you tell me.

*Id.* at 296. Juror 40 stated, "That's my position" and further explained,

> I try to be very, very logical and methodical in decisions I make in my life and, you know, trying to see both sides of everything. But like I said, if it's a case involving violence and women, it's just something that I've already experienced in my life, and I fear that I will always inherently have as a mother, so that's just the one thing that I probably couldn't get past.

*Id.* at 296-97.

The State then questioned juror 40, acknowledging "these biases that you think might be there." *Id.* at 298. Counsel asked juror 40 if she could "set those things aside" in this case "and come to a conclusion at the end just based on the evidence." *Id.* Juror 40 responded, "I could try." *Id.*

The State also acknowledged the reaction juror 40 might have to "the graphic evidence" in the case. *Id.* at 299. Counsel asked if she could "take those emotions, set them aside, . . . but then come to a conclusion of Mr. Talbott's innocence or guilt based on the evidence," and not "any other experience that you've had?" *Id.* Juror 40 again responded, "I could try," noting "that there's always multiple sides to a story, and I'm a fact-based person, so I could tell you that I will give it my very best, should I end up being on the jury, to do that." *Id.*

Talbott moved to excuse juror 40 for cause. The trial court denied Talbott's motion, noting that the court often saw jurors "expressing some concerns about

5

*State v. Talbott*, No. 100540-7

how they may react," as "anybody would have to, because they haven't seen the evidence." *Id.* at 302. Juror 40 left the courtroom, and voir dire continued with other prospective jurors.

Some prospective jurors were dismissed for cause on Talbott's motion, such as juror 83, who "read a lot about this case when it first came in the news" and thought "it would be difficult for [them] to be impartial," and juror 109, who "felt it would be difficult for [them] to be fair and impartial in this case . . . based on some of [their] own personal experiences." *Id.* at 325, 327; *see also* 2 Clerk's Papers (CP) at 320. At the end of voir dire, the court provided both parties the opportunity to raise any additional for-cause challenges, and both declined.

The parties then exercised peremptory challenges. After the State exercised its first peremptory challenge, juror 40 moved into the jury box. Talbott never attempted to use a peremptory challenge to remove juror 40, and he affirmatively "accept[ed] the panel" after exercising only four of his peremptory challenges. 2 VRP (June 13, 2019) at 721; *see also* 2 CP at 332. Talbott had at least two additional peremptory challenges that he did not use on any prospective juror.[1] Thus, Talbott explicitly agreed to be tried by a jury that included juror 40.

---

[1] It appears that Talbott had a total of five unexercised peremptory challenges when he accepted the jury as empaneled. He did not use two of the six peremptory challenges allotted to him pursuant to CrR 6.4(e)(1). Talbott would also have had one extra peremptory challenge for each of the three alternate jurors who were selected to sit on his case. *See* CrR 6.5.

C.      Conviction and appeal

Talbott was convicted and sentenced to two consecutive terms of life in prison without the possibility of parole.  He appealed, contending, among other things, that the seating of juror 40 violated his right to a fair trial by an impartial jury.  The Court of Appeals agreed and reversed in an unpublished opinion, holding that Talbott was not "provided a fair and impartial jury."  *State v. Talbott*, No. 80334-4-I, slip op. at 12 (Wash. Ct. App. Dec. 6, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/803344.pdf.  The Court of Appeals summarily rejected the State's argument that Talbott "waived" his challenge to juror 40 by "failing to exhaust all of his peremptory challenges after the for-cause challenge to juror 40 was denied."  *Id.* at 4 (citing *State v. Peña Salvador*, 17 Wn. App. 2d 769, 776-83, 487 P.3d 923, *review denied*, 198 Wn.2d 1016 (2021)).

We granted the State's petition for review and denied Talbott's cross petition, which raised other alleged trial errors contingent on our acceptance of review.  We now reverse and remand to the Court of Appeals to address the remaining issues Talbott raised on appeal.  *See* RAP 13.7(b).

ISSUE

If a party believes that their for-cause challenge to a prospective juror was erroneously denied, may the party decline to use an available peremptory

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

challenge, allow the juror to be seated, and then appeal on the basis that their for-cause challenge should have been granted?

ANALYSIS

Criminal defendants have the constitutional right to a fair and impartial jury. WASH. CONST. art. I, § 22; U.S. CONST. amend. VI.[2] However, "the burden of preventing trial errors rests squarely upon counsel for both sides." *State v. Farley*, 48 Wn.2d 11, 15, 290 P.2d 987 (1955). Therefore, even defense counsel in a criminal case must attempt to correct errors at trial, rather than saving them for appeal "in case the verdict goes against [them]." *Id.* In this case, we must apply these general principles to the narrow question presented.

The question is whether a party who does not use all of their peremptory challenges and accepts the jury panel as presented may nevertheless appeal on the basis that a seated juror should have been dismissed for cause. The answer is no. Therefore, the Court of Appeals erred in reaching the merits of Talbott's claim that juror 40 should have been dismissed for cause.

A.    *Clark* holds that available peremptory challenges must be used curatively to ensure a fair trial in the first instance

To determine whether Talbott's challenge to juror 40 is properly presented on appeal, we must clarify the relationship between two related, but somewhat

---

[2] Talbott does not differentiate between state and federal protections. We therefore do not engage in an independent analysis of the Washington Constitution in this case.

8

*State v. Talbott*, No. 100540-7

confusing, lines of Washington precedent.  One line of precedent culminated in

*Clark*, 143 Wn.2d 731.  The other culminated in *Fire*, 145 Wn.2d 152.

The *Clark* line addresses parties who did not attempt to use their peremptory

challenges to cure an alleged jury-selection error.  Cases in the *Clark* line hold that

if a party "accepted the jury as ultimately empaneled and did not exercise all of

[their] peremptory challenges," then they do not have the right to appeal "based on

the jury's composition."  143 Wn.2d at 762 (citing *State v. Tharp*, 42 Wn.2d 494,

500, 256 P.2d 482 (1953); *State v. Collins*, 50 Wn.2d 740, 744, 314 P.2d 660

(1957); *State v. Robinson*, 75 Wn.2d 230, 231-32, 450 P.2d 180 (1969); *State v.*

*Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995); *State v. Elmore*, 139 Wn.2d

250, 277, 985 P.2d 289 (1999)).  The *Clark* line thus encourages parties to cure

jury-selection errors with their peremptory challenges.  This ensures that

peremptory challenges are properly used to promote a defendant's right to "'an

impartial jury and a fair trial'" in the first instance.  *State v. Lupastean*, 200 Wn.2d

26, 48, 513 P.3d 781 (2022) (quoting *Georgia v. McCollum*, 505 U.S. 42, 57, 112

S. Ct. 2348, 120 L. Ed. 2d 33 (1992)).

Cases in the *Clark* line have considered various types of jury-selection

errors, including claims that "no oath was administered to the prospective jurors,"

"that the jury was prejudiced by the *voir dire* examination," and "that the trial court

erred . . . in overruling [a party's] challenge of a juror for actual bias."  *Tharp*, 42

9

Wn.2d at 499; *Collins,* 50 Wn.2d at 744; *Rich v. Campbell*, 164 Wash. 393, 394, 2 P.2d 886 (1931).  In all cases, we have consistently held that if a "defendant does not exercise all peremptory challenges it is presumed that [they are] satisfied with the jury."  *State v. Rice*, 120 Wn.2d 549, 558-59, 844 P.2d 416 (1993); *see also State v. Jeffries*, 105 Wn.2d 398, 409, 717 P.2d 722 (1986).

The *Fire* line of cases, by contrast, addresses parties who *did* use their peremptory challenges to cure jury-selection errors and subsequently exhausted their peremptory challenges.  For many years, we automatically reversed in such cases because the party was "'forced'" to use a peremptory challenge on a prospective juror who should have been dismissed for cause.  *Fire*, 145 Wn.2d at 158 (quoting *United States v. Martinez-Salazar*, 528 U.S. 304, 314, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000)); *see State v. Stentz*, 30 Wash. 134, 147, 70 P. 241 (1902)); *State v. Parnell*, 77 Wn.2d 503, 508, 463 P.2d 134 (1969).  However, *Fire* "expressly abandon[ed]" this practice and held that a "defendant's rights [are] not violated simply because [they] had to use peremptory challenges to achieve an impartial jury."  *Id.* at 165, 163 (abrogating *Stentz*, 30 Wash. 134, and *Parnell*, 77 Wn.2d 503).

Thus, unlike *Clark*, *Fire* did not ask *whether* a party must use their peremptory challenges to cure an alleged jury-selection error.  Instead, *Fire* asked

10

*State v. Talbott*, No. 100540-7

whether a party who *does* curatively use their peremptory challenges is entitled to reversal on appeal. Nevertheless, *Fire* stated in dicta that

> if a defendant believes that a juror should have been excused for cause and the trial court refused [their] for-cause challenge, [*they*] *may elect not to use a peremptory challenge and allow the juror to be seated.* After conviction, [*they*] *can win reversal on appeal if* [*they*] *can show that the trial court abused its discretion in denying the for-cause challenge.*

*Id.* at 158 (emphasis added) (citing *Martinez-Salazar*, 528 U.S. at 314-16).

This dicta from *Fire* appears to reject *Clark*'s holding that a defendant must use their available peremptory challenges to cure an alleged jury-selection error. *Clark* had been decided less than six months earlier. Yet, *Fire* did not distinguish, disavow, or otherwise acknowledge *Clark*. As a result, the Court of Appeals has been left to try to reconcile these authorities. We must now resolve the confusion.

B.    The Court of Appeals has issued inconsistent decisions on the applicability of *Clark* and *Fire*

Since *Clark* and *Fire* were issued in 2001, the Court of Appeals has attempted to reconcile them many times. However, the Court of Appeals has not reached a consensus between (or even within) divisions.

Within Division One, different panels have reached different conclusions. Shortly after *Fire* and *Clark* were decided, some cases relied on *Fire* without mentioning *Clark*. *E.g.*, *State v. Gonzales*, 111 Wn. App. 276, 282, 45 P.3d 205 (2002); *State v. David*, 118 Wn. App. 61, 68, 74 P.3d 686 (2003), *modified on*

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*remand*, 130 Wn. App. 232, 122 P.3d 764 (2005). However, in 2021, Division

One explicitly addressed the tension between *Fire* and *Clark* in two opinions,

which reached two different conclusions.

First, in *State v. Gebremariam*, Division One relied on *Clark* to hold that "a

claim of error in denying a challenge for cause is not properly raised where, as

here, the defendant accepts a jury without exercising all available peremptory

challenges." No. 80235-6-I, slip op. at 4 (Wash. Ct. App. Jan. 19, 2021)

(unpublished), https://www.courts.wa.gov/opinions/pdf/802356.pdf, *review denied*,

198 Wn.2d 1012 (2021).[3] In doing so, the *Gebremariam* court explicitly rejected

*Fire*'s statement that a party has no obligation to use their peremptory challenges

curatively. *Id.* at 4-5. The court reasoned that *Fire*'s statement was "dicta"

because that case "did not involve a situation where the defendant failed to use all

of their peremptory challenges." *Id.* The court further noted that *Fire* "does not

address, much less overrule, the long line of case law holding to the contrary,"

including *Clark*. *Id.* at 5 n.3.

Nevertheless, later that same year, Division One issued *Peña Salvador*, a

published opinion that relied on *Fire* to hold that parties have no obligation to use

their peremptory challenges to cure alleged jury-selection errors. 17 Wn. App. 2d

at 776-83. As in *Gebremariam*, the opinion in *Peña Salvador* explicitly

---

[3] Unpublished opinions are cited solely to illustrate the conflict in the Court of Appeals.

acknowledged the apparent disconnect between *Clark* and *Fire*. However, *Peña Salvador* reached the opposite conclusion, applying *Fire*'s dicta instead of *Clark*'s holding. Division One took the same approach in Talbott's case. *Talbott*, No. 80334-4-I, slip op. at 4 (citing *Peña Salvador*, 17 Wn. App. 2d at 776-83).

Division Two does not appear to have resolved the confusion created by *Clark* and *Fire*. Instead, it has "assum[ed], but not decid[ed]," that a for-cause challenge may be raised on appeal, notwithstanding the appealing party's failure to use a peremptory strike on the challenged juror. *State v. Burns*, No. 45195-6-II, slip op. at 15 (Wash. Ct. App. Feb. 10, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2045195-6-II%20%20Unpublished%20Opinion.pdf; *see also Martini v. State*, 121 Wn. App. 150, 175-79, 89 P.3d 250 (2004) (Quinn-Brintnall, C.J., concurring in the result).

By contrast, Division Three has repeatedly followed the *Clark* line of cases, holding that where a prospective juror was unsuccessfully challenged for cause but the defendant "elected not to remove [the juror] with [their] allotted peremptory challenges," then the defendant "waived that error." *State v. Munzanreder*, 199 Wn. App. 162, 179-80, 398 P.3d 1160, *review denied*, 189 Wn.2d 1027 (2017); *see also State v. Cadenas*, No. 36690-1-III, slip op. at 5-6 (Wash. Ct. App. Dec. 22, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/366901_unp.pdf.

*State v. Talbott*, No. 100540-7

In addition, there are some opinions that appear to follow *Fire*, but their underlying reasoning is different.  In several cases, the Court of Appeals has reached the merits of an alleged jury-selection error, despite the defendant's failure to exhaust their peremptory challenges, because the defendant "raise[d] an issue of manifest constitutional error."  *State v. Ramsey*, No. 54638-8-II, slip op. at 14 (Wash Ct. App. Mar. 22, 2022) (unpublished), https://www.courts.wa.gov/ opinions/pdf/ D2%2054638-8-II%20Unpublished%20Opinion.pdf; *see also State v. Guevara Diaz*, 11 Wn. App. 2d 843, 853, 456 P.3d 869, *review denied*, 195 Wn.2d 1025 (2020).[4]

These cases do not resolve the tension between *Fire* and *Clark* because neither *Fire* nor *Clark* was based on manifest constitutional error.  In addition, Talbott conceded at oral argument that manifest constitutional error is not at issue here.  Wash. Sup. Ct. oral argument, *State v. Talbott*, No. 100540-7 (Sept. 22, 2022), at 31 min., 08 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org/video/washington-state-supreme-court-2022091210/?eventID=2022091210.  We therefore express no opinion on the proper application of the manifest constitutional error standard in this context.

---

[4] In *Guevara Diaz* although the court reached the merits because of a finding of manifest constitutional error, defense counsel *did* exhaust all their peremptory challenges.  11 Wn. App. 2d at 860-61.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Thus, the Court of Appeals has long been divided on the relationship between *Clark* and *Fire*. Talbott urges this court to resolve the confusion by holding that *Fire* controls. We reject Talbott's arguments and expressly state that *Fire*'s dicta did not overrule or disavow *Clark*.

C.    *Fire* does not apply where parties fail to exhaust their peremptory challenges

As described above, the *Clark* and *Fire* lines of our precedent address two different situations. The *Fire* line is concerned with parties who exhausted their peremptory challenges in order to cure alleged jury-selection errors. The *Clark* line is concerned with parties who failed to do so. The Court of Appeals has understandably struggled to apply these opinions in light of *Fire*'s confusing dicta and we now reaffirm *Clark* and clarify that *Fire* does not apply where a party fails to exhaust their peremptory challenges.

*Fire*'s dicta did not reject *Clark*, either explicitly or implicitly. As noted above, the defendant in *Fire* cured the alleged jury-selection error with a peremptory challenge. *Fire*'s statement about what could happen if a defendant failed to do so was consequently "'unnecessary to decide the case.'" *Johnson v. Wash. State Liquor & Cannabis Bd.*, 197 Wn.2d 605, 618, 486 P.3d 125 (2021) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Domingo*, 155 Wn.2d 356, 366, 119 P.3d 816 (2005)). As a result, this statement from *Fire* was "'obiter dictum, and need not be followed.'" *Id.* (internal quotation marks omitted)

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(quoting *Domingo*, 155 Wn.2d at 366). Moreover, elevating *Fire*'s dicta over *Clark*'s holding would violate the rule that "'we will not—and should not—overrule [precedent] sub silentio.'" *Lupastean*, 200 Wn.2d at 40 (quoting *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 280, 208 P.3d 1092 (2009)). We therefore decline to do so.

Nevertheless, Talbott argues that *Clark* cannot apply here because Talbott tried to challenge juror 40 for cause, and the defendant in *Clark* "did not challenge any of the ultimately seated jurors for cause." 143 Wn.2d at 763-64; *see* Answer & Cross-Pet. at 18; *Peña Salvador*, 17 Wn. App. 2d at 780. This argument disregards the reasoning and precedent on which *Clark* was based.

Our analysis in *Clark* did not rely on the defendant's failure to raise a for-cause challenge. Instead, *Clark* declined to reach the merits "because Clark accepted the jury as ultimately empaneled and did not exercise all of his peremptory challenges." 143 Wn.2d at 762. This decision was supported by a long line of precedent holding that a party "must show the use of all of [their] peremptory challenges or [they] can show no prejudice arising from the selection and retention of a particular juror to try the cause." *Tharp*, 42 Wn.2d at 500. Some cases in that line considered denials of "counsel's challenge of a juror for actual bias." *Rich*, 164 Wash. at 394; *see also State v. Jahns,* 61 Wash. 636, 638,

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

112 P. 747 (1911). Therefore, even if *Clark* itself is distinguishable, the rule expressed by the *Clark* line of cases is not.

Finally, some appellate opinions have chosen to follow *Fire* instead of *Clark* on the basis that "the Washington Supreme Court has not differentiated between cases in which a defendant has exhausted their peremptory challenges and those in which they have not." *Peña Salvador*, 17 Wn. App. 2d at 783. This conclusion is mistaken. As discussed above, our court has long drawn a distinction between parties who exhaust their peremptory challenges and those who do not. We reaffirm that distinction today.

*Fire*'s dicta did not implicitly overrule *Clark*'s holding. As a result, we overrule opinions that have relied on *Fire*'s dicta to hold that a party need not cure jury-selection errors with their available peremptory challenges. *E.g.*, *Peña Salvador*, 17 Wn. App. 2d 769; *David*, 118 Wn. App. 61; *Gonzales*, 111 Wn. App. 276. This error was understandable, given the confusing relationship between *Clark* and *Fire*. We now clarify that *Clark* continues to apply where the appealing party has not exhausted their peremptory challenges. In cases where the party has exhausted their peremptory challenges, *Fire* applies.

D.     We decline to adopt *Fire*'s dicta or disavow *Clark*

Next, Talbott claims that "[e]ven if the clear language in *Fire* is dicta, it is persuasive dicta" that we should now adopt. Answer & Cross-Pet. at 17. We

*State v. Talbott*, No. 100540-7

disagree. *Fire*'s dicta is not persuasive because it was based on a misinterpretation of *Martinez-Salazar*. Talbott also has not shown that *Clark* is "'incorrect and harmful'" or that its legal underpinnings "'have changed or disappeared.'" *State v. Crossguns*, 199 Wn.2d 282, 290, 505 P.3d 529 (2022) (internal quotation marks omitted) (quoting *State v. Johnson*, 188 Wn.2d 742, 756-57, 399 P.3d 507 (2017)). We therefore decline to adopt *Fire*'s dicta.

As noted above, *Fire* relied on *Martinez-Salazar* for the proposition that

> if a defendant believes that a juror should have been excused for cause and the trial court refused [their] for-cause challenge, [they] may elect not to use a peremptory challenge and allow the juror to be seated. After conviction, [they] can win reversal on appeal if [they] can show that the trial court abused its discretion in denying the for-cause challenge.

145 Wn.2d at 158 (citing *Martinez-Salazar*, 528 U.S. at 314-16). However, the cited portion of *Martinez-Salazar* is not based on any legal principle that applies to the states. Instead, it is based on Federal Rule of Criminal Procedure 24 (Rule 24) and the actions of the federal district court in that particular case.

In *Martinez-Salazar,* the defendant unsuccessfully challenged a prospective juror for cause, then used a peremptory challenge to remove the juror. 528 U.S. at 309. The Court determined that the defendant's use of a peremptory challenge cured the potential error. *Id*. at 307. The Court also held that this curative use of a peremptory challenge did not deprive the defendant of "any rule-based or

18

*State v. Talbott*, No. 100540-7

constitutional right." *Id*. As discussed above, our court adopted the same holding

in *Fire*. 145 Wn.2d at 163. That holding is not at issue in Talbott's case.

However, *Martinez-Salazar* considered an additional claim. The United

States argued "that under federal law, a defendant is obliged to use a peremptory

challenge to cure the judge's error." *Martinez-Salazar*, 528 U.S. at 307. The

Court had previously upheld a similar state-law requirement because it properly

"subordinates the absolute freedom to use a peremptory challenge as one wishes to

the goal of empaneling an impartial jury." *Ross v. Oklahoma*, 487 U.S. 81, 90, 108

S. Ct. 2273, 101 L. Ed. 2d 80 (1988). Nevertheless, in *Ross*, the Court "left open"

the question of whether such a requirement applies "in federal jury selection."

*Martinez-Salazar*, 528 U.S. at 307. *Martinez-Salazar* answered no because "[t]he

District Court did not demand—and Rule 24(b) did not require—that Martinez-

Salazar use a peremptory challenge curatively." *Id.* at 315.

*Fire*'s dicta relied on this portion of *Martinez-Salazar*'s analysis. 145

Wn.2d at 158. However, *Martinez-Salazar* did not suggest that states are

prohibited, or even discouraged, from requiring parties to cure alleged jury-

selection errors with their peremptory challenges. Indeed, most states impose such

a requirement.[5] *Martinez-Salazar* simply recognized that Rule 24(b) does not

---

[5] Our review indicates that 37 states require a defendant to use their peremptory challenges curatively before they can appeal a denial of a for-cause challenge. *See* Suppl. Br. of

19

require the curative use of peremptory challenges in federal jury selection. At the same time, *Martinez-Salazar* implied that the federal district court could have imposed such a requirement but chose not to. Because *Fire*'s dicta did not adequately consider this context, we decline to adopt it.

Moreover, as indicated by the many states that apply similar rules, there are good reasons to require parties to use their available peremptory challenges to cure jury-selection errors. Doing so promotes a defendant's right to receive a fair trial in the first instance and prevents unnecessary retrials. *See Ross*, 487 U.S. at 90. This helps to ensure that peremptory challenges are used to "promote, rather than inhibit, the exercise of fundamental constitutional rights." *Lupastean*, 200 Wn.2d at 52. By contrast, Talbott's approach could improperly discourage counsel from curing potential jury-selection errors with peremptory challenges in order to obtain reversal on appeal. We therefore reaffirm *Clark* and disavow *Fire*'s contrary dicta.

E.      *Clark* applies to Talbott's claim that juror 40 should have been excused for cause

Finally, Talbott argues we must reach the merits of his claim based on our recent opinion in *State v. Zamora*, which states that "[d]efense counsel cannot

---

Pet'r at 3-6 nn.2-6. Furthermore, some states impose additional limitations. *See, e.g.*, *Trotter v. State*, 576 So. 2d 691, 693 (Fla. 1990) (requiring defendant to exhaust peremptory challenges *and* show objectionable juror who would have otherwise been struck); *State v. Kelly*, 256 Conn. 23, 31, 770 A.2d 908 (2001) (requiring defendants to exhaust peremptory challenges *and* seek an additional peremptory challenge once for-cause challenge is denied); *Sayedzada v. State*, 134 Nev. 283, 293, 419 P.3d 184 (Nev. App. 2018) (requiring defendant to exhaust peremptory challenges *and* show that a biased or unfair juror sat on panel).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

waive [their] client's constitutional right to a fair trial." 199 Wn.2d 698, 717, 512 P.3d 512 (2022). Talbott's reliance on *Zamora* is misplaced.

In *Zamora*, the prosecutor committed misconduct during voir dire when he "repeatedly asked the potential jurors about their views on unlawful immigration, border security, undocumented immigrants, and crimes committed by undocumented immigrants." *Id.* at 701. It was clear from the record that "the prosecutor's conduct . . . flagrantly or apparently intentionally appealed to jurors' potential racial bias." *Id.* at 718. Although defense counsel did not object, we reached the merits and reversed due to "the inherent and grave prejudicial nature of state-sanctioned invocation of racial bias in the administration of justice." *Id.* at 721.

Talbott's case does not involve any alleged racial or ethnic bias. It does not ask us to "confront racial animus in the justice system" or to consider alleged race-based juror misconduct during trial or in deliberations. *Peña-Rodriguez v. Colorado*, 580 U.S. 206, 222, 137 S. Ct. 855, 197 L. Ed. 2d 107 (2017); *see also State v. Berhe*, 193 Wn.2d 647, 444 P.3d 1172 (2019). Therefore, the considerations that apply to the "unique historical, constitutional, and institutional concerns" of racial bias do not apply here. *Peña-Rodriguez*, 580 U.S. at 224.

*State v. Talbott*, No. 100540-7

CONCLUSION

We reaffirm that if a party allows a juror to be seated and does not exhaust their peremptory challenges, then they cannot appeal on the basis that the juror should have been excused for cause. Here, Talbott did not attempt to strike juror 40 with an available peremptory challenge, he did not exhaust his peremptory challenges on other jurors, and he affirmatively accepted the jury panel as presented. As a result, Talbott is not entitled to have his for-cause challenge to juror 40 considered on appeal. We reverse and remand to the Court of Appeals to address the claims it did not reach in its prior opinion.

_____
Yu, J.

WE CONCUR:

_____
González, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Gordon McCloud, J.

_____
Madsen, J.

_____
Montoya-Lewis, J.

_____
Owens, J.

_____
Whitener, J.

22